UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BANKRUPTCY DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| ARTHUR D. GOLD | ) | Case No. 05-22609-JNF |
|    Debtor | ) | |

-----------------------------------

RESPONSE OF DEBTOR TO MOTION FOR RELIEF FROM STAY
TO ALLOW THE INTERNAL REVENUE SERVICE
TO ADMINISTRATIVELY COLLECT NON-DISCHARGEABLE TAXES
FROM PROPERTY NOT INCLUDED IN ESTATE AND NOT SUBJECT TO CLAIMS
<u>BY THE CHAPTER 7 TRUSTEE AND AFFIRMATIVE DEFENSES</u>

To the Honorable Joan N. Feeney, Bankruptcy Judge:

Arthur D. Gold, the Debtor in the above captioned case, submits the following in response to the Motion for Relief from Stay to Allow the Internal Revenue Service (the "Moving Party") to Administratively Collect Non-Dischargeable Taxes from Property not Included in Estate and Not Subject to Claims by the Chapter 7 Trustee (hereinafter the "Motion"). The response to the Motion is due to be filed on December 1, 2005. The Debtor also submits various Affirmative Defenses to the Motion.

1. Admitted.

2. The Debtor admits a tax liability to the Moving Party.

3. Admitted.

4. The Debtor admits the first, second and fourth sentences in paragraph 4. The Debtor denies the third sentence of paragraph 4. The Debtor has no knowledge of the last sentence of paragraph 4 and therefore denies same.

5. Denied.

    (a) Denied.

    (b) Denied

6. Denied. The Debtor is also uncertain what is meant by the following language in the proposed order:

"….and only with the consent of the Chapter 7 Trustee to claims against third parties and to property in existence pre-petition."

### AFFIRMATIVE DEFENSES

1. Mr. Gold is indebted to the United States for individual income tax, having filed individual income tax returns for the taxable years ending December 31, 1998, 1999, 2001, 2002, 2003 and 2004 on or about July 21, 2005 ("the returns"). Mr. Gold's individual income tax liability for the taxable year ending December 31, 2000 is not subject to the USA Motion but is included and addressed in this Opposition.

2. Mr. Gold filed the returns as a married filing separately taxpayer, as he was and is currently married to Penny Gold although they live apart. They have been married since 1969 and have two adult children of the marriage. Mr. Gold is 65 years of age and Penny Gold is 58 years of age.

3. After the filing of the returns, the taxpayer delinquent account of Mr. Gold in the inventory of the IRS generated by the individual income tax liabilities of Mr. Gold as shown on the income tax returns (the "TDA") was assigned to Revenue Officer Donald M. Mavrides ("Mavrides") of the Southboro, Massachusetts office of the Collections Division of the IRS. That IRS Collections Division office is supervised by Collections Group Manager Peter Sorrentino.

4. On September 29, 2005, the IRS issued to Mr. Gold by certified mail pre-levy Collection Due Process Notices pursuant to §6330(a)(2) of the Internal Revenue Code of 1986, as amended (the "Code") for the TDA (the "CDP Notices"). The CDP Notices were only for the taxable years ending December 31, 2002, 2003 and 2004. No pre-levy Collection Due Process notices required by §6330 of the Code have yet been issued. Pursuant to §6330(a)(1) of the Code, no levy may be made until after the expiration of 30 days after the date the CDP Notices are issued not counting the date the CDP Notices are issued (the "CDP 30 day period"), pursuant to Reg. §301.6330-1(c)(1).

5. Mr. Gold filed his Petition on October 14, 2005, before the expiration of the CDP 30 day period. The automatic stay suspends the running of that CDP 30 day period.

6. On or about May of 2004, the Internal Revenue Service (the "IRS") commenced to levy Mr. Gold's earnings at his employer for his individual income tax liability for the taxable year ending December 31, 2000 ("the Wage Levy").

7. At or about the same time that Mr. Gold became subject to the Wage Levy, his spouse Penny Gold announced she wished a divorce and for Mr. Gold to vacate the marital residence, a condominium unit owned by Penny Gold.

8. After or before the commencement of the Wage Levy, Mavrides caused to be summonsed from the bank at which Mr. Gold and his wife maintained a joint checking account, copies of statements and canceled check for the period. Mavrides did not summons at that time copies of deposit items as he could have.

9. At or about September 1, 2005, Mr. Gold retained the Boston tax law firm of Peter L. Banis, P.C. ("the Banis Firm") to prepare and file for him a Doubt as to Collectibility Offer in Compromise pursuant to §7122 of the Internal Revenue Code of

3

1986, as amended (the "Code") and Treasury Regulation promulgated thereunder ("the Offer") to resolve the TDA and his 2000 tax year liabilities with the IRS.

10. In the course of preparing the Offer, Peter L. Banis ("Banis") of the Banis Firm met with Penny Gold and her domestic counsel, Gary O. Todd, of the Boston firm of Todd & Weld LLP, to discuss the amount of alimony and support Mr. Gold would under current Massachusetts Domestic Relations law be required to pay to Penny Gold as alimony given his current earnings and the amount he had agreed to pay, $6,700 per month, and in addition thereto the continuation of health insurance coverage for Penny Gold through Mr. Gold's current employer (the "Domestic Agreement").

11. In the course of preparing the Offer, and in anticipation of the impending divorce of Mr. Gold and Penny Gold, the Banis Firm included that monthly amount of $6,700 as a court ordered payment and an allowable expense in the computation of the income portion of the Offer of Mr. Gold. In addition, the Banis firm included in allowable expenses for health costs the amount of the current health insurance coverage of Mr. Gold which includes coverage for his wife Penny Gold, consistent with the Domestic Agreement.

12. The Banis Firm determined the asset portion of the Offer would not be in excess of $1,200.

13. The Banis Firm determined the income portion of the Offer would be $61,152 based upon the income and allowable expense calculations required for Offer in Compromise.

4

14. On September 26, 2005, the Banis Firm filed the properly calculated Offer of Mr. Gold with the Internal Revenue Service Centralized Offer in Compromise processing center in Holtsville, New York ("Holtsville COIC") stating Mr. Gold offered $63,000.

15. The Offer was accompanied by the personal check of Mr. Gold in the amount of $150 payable to the United States Treasury which payment is the required IRS processing fee for the Offer.

16. As a courtesy, the Banis Firm mailed a copy of the Offer to Mavrides in anticipation of Mavrides being required to release the Wage Levy for the 2000 taxable year due to the command of and in accordance with §3462(e)(2) of RRA '98, P.L. 105-206, amending §7122 of the Code, when the Offer was accepted for processing by Holtsville COIC .

17. On October 8, 2005, the Holtsville COIC of the IRS accepted the Offer for processing within the meaning of Reg. §301-7122-1(d)(2) and because of that the Offer became pending within the meaning of §3462(B) of P.L.105-206. The processing letter attached to this Motion as Exhibit 1 (the "Accepted for Processing Letter") reflects the Offer was accepted for processing pursuant to the taxpayer's records of account with IRS for the TDA years and 2000 on October 4, 2005.

18. Having determined the Offer was accepted for processing prior to the issuance of the Accepted for Processing letter, Banis requested Mavrides, due to the Accepted for Processing Letter, provide a release of the Wage Levy as required by §3462(e)(2) of RRA '98, P.L. 105-206. Mavrides refused to release the Wage Levy.

19. On October 6, 2005, the Banis Firm then prepared and filed with Mavrides a Collection Appeal pursuant to the Collection Appeals Program of the IRS.

5

20. A telephone conference was then held between Banis representing Mr. Gold and Sorrentino and Mavrides representing the IRS. Sorrentino stated the Wage Levy need not be released citing section 5.8.3.18 (5) of the Internal Revenue Manual ("IRM"). Sorrentino and Mavrides denied §3462(e)(2) of RRA '98, P.L. 105- 206 required the Wage Levy be released citing that section 5.8.3.18 (5) of the IRM. The parties having failed to come to an agreement, Sorrentino caused the matter to be referred to the Boston office of the Office of Appeals of the IRS for a hearing before an IRS Appeals Officer (the "Hearing"), as he was required to do.

21. The matter of the Hearing was assigned to IRS Settlement Officer Maria R. Russo ("Russo") of the Portsmouth, New Hampshire office of the Office of Appeals of IRS.

22. On or about October 14, 2005, Russo telephoned Banis to inform him that she had "called around" and had found the Wage Levy could "stay on" notwithstanding §3462(e)(2) of RRA '98, P.L. 105-206. Russo cited to Banis IRS Chief Counsel Advisory CCA 200124020 as her authority to allow the Wage Levy to "stay on" and in addition cited IRM 5.8.3.18 (5). Russo denied to Banis that §3462(e)(2) of RRA '98, P.L. 105-206 required release of the Wage Levy. Russo had no explanation of why I.R.M. 5.8.3.18(2) is an exact mirror of §3462(e)(2) of RRA '98, P.L. 105-206. Astonishingly, Russo denied that the use by Congress of the words "suspension of collection by levy" in §3462(e)(2) of P.L. 105-206 meant the Wage Levy had to be suspended..

23. To the date of this Motion, the Banis Firm has not received a written determination of Russo's sustaining IRS Collection Division's right to keep the Wage

6

Levy "on", notwithstanding that IRM 5.1.9.4.2 requires Russo to provide a written determination of findings and Mr. Gold requires that determination to here proceed..

24. After the filing of the Offer by Mr. Gold with Holtsville COIC and after the Accepted for Processing Letter was issued by Holtsville COIC, Mavrides caused to be filed with Holtsville COIC an IRS Form 657. Upon information and belief, the comments made by Mavrides in his official capacity on that Form 657 caused Holtsville COIC to revoke its Accepted For Processing Letter issued by it on October 8, 2005 and issue to Mr. Gold a letter stating the Offer was being returned to Mr. Gold since Holtsville COIC had now determined the Offer was submitted "solely to delay collection of the tax" (the "Processing Revocation Letter"). A copy of the Processing Revocation Letter dated October 12, 2005 is attached as Exhibit 2 to this Motion.

25. On October 14, 2005, Mr. Gold filed the Chapter 7 Petition in this case (the "Petition").

26. Due to the filing of the Petition, Penny Gold has temporarily suspended prosecution of her divorce from Mr. Gold.

27. Having not received the written report from Russo as required by the IRM and despite requests made in writing to Russo by the Banis Firm on November 9 and November 22 of 2005, and Mavrides having refused to provide a copy of the IRS Form 657 filed by him with Holtsville COIC which caused COIC to revoke the Accepted for Processing Letter and issue the Processing Revocation Letter, the Banis Firm filed with the Boston office of the Disclosure Division of the IRS ("IRS Disclosure") a Freedom of Information Act request (the "FOIA Request") on October 20, 2005 seeking a copy of the complete administrative file of Mr. Gold maintained by IRS so as to by that method

7

obtain a copy of the written report of Russo and the IRS Form 657 filed by Mavrides.  On November 29, 2005, the Banis Firm was informed by IRS Disclosure that the administrative file of Mr. Gold maintained by IRS cannot be located so as to comply with the FOIA Request.  On the date of this Motion, the Banis Firm was again told the administrative file still cannot be located so as to comply with the FOIA Request.

ARGUMENT

Mr. Gold desires and is by right legally allowed to resolve his TDA with IRS through an Offer in Compromise pursuant to §7122 of the Code.  He had attempted to do just that with the IRS and was in the process of doing just that before two separate acts by the IRS forced him to file the Petition.  The first of those acts was the refusal of Russo to adhere to the plain language of §3462(e)(2) of RRA '98, P.L. 105-206 and order the Collection Division of the IRS to release the Wage Levy so that Mr. Gold could support himself and satisfy his current obligations while the Offer was being processed by the IRS to resolve his TDA.  The second act was Mavrides's intervention in the Offer processing procedures maintained by Holtsville COIC causing Holtsville COIC to issue the Processing Revocation Letter.  He will attempt, again, to resolve his tax liabilities with the IRS through an Offer in Compromise with the IRS, but will do so this time through an Order of this Court that the IRS actually process an Offer and while the Court maintains jurisdiction and may afford him the protection of the automatic stay he so obviously needs.

8

In order to exercise the Collection Due Process rights afforded him, Mr. Gold must move this Court for relief from the automatic stay. It is not enough that the United States be granted relief from the stay. Mr. Gold will so move and after that motion is allowed, will then file with the Internal Revenue Service his election to exercise the Collection Due Process rights afforded him by §6330 of the Code and specifically the right to offer a collection alternative which in §6330(c)(2)(A)(iii) is stated to be an offer in compromise. If he attaches to this Motion copies of his election of rights to a hearing at the Office of Appeals of the Internal Revenue Service in Boston, Massachusetts where pursuant to §6330 of the Code as to the TDA years he will offer the collection alternative of an Offer in Compromise as allowed him pursuant to §6330(c)(2)(A)(iii), no doubt, the IRS will refuse to process that Offer in Compromise because its statutorily unsupported and unsupportable policy of simply refusing to process offers in compromise while a bankruptcy case is pending. One of the reasons they so refuse is to avoid the "bright lights" of a court such as this while they deal with taxpayers in the manner they have thus far dealt with Mr. Gold. A second reason they refuse to process offers while a taxpayer is in bankruptcy, avoiding the "bright lights", is so the IRS can file nominee liens against the taxpayer's non-liable spouse. Even though that practice has been banned by the United States Tax Court, IRS continues to file nominee liens against non-liable spouses while offers in compromise are pending in flagrant disregard of that holding. See, Skrizowski v. Commissioner, TC Memo 2004-229 (2004). IRS intends to file a nominee lien against Penny Gold to collect the tax owed by Mr. Gold and that is what the phrase in the proposed order "… and only with the consent of the Chapter 7 Trustee to claims against third parties and to property in existence pre-petition" means. For those reasons

9

and others, Mr. Gold will seek an Order of this Court that the IRS process his to be re-filed Offer in Compromise but maintain jurisdiction and keep the automatic stay in effect so that the illegal collection actions so routinely used by IRS in Offer in Compromise cases may be prevented here. If the USA Motion is allowed, there is no doubt those practices of IRS will resume.

Further, Mr. Gold opposes the USA Motion because it is the intent of the IRS to resume collection of the TDA by a Wage Levy and such a levy would not allow him to provide for his necessary living expenses. Moreover, as demonstrated by the acts of Russo and Mavrides stated above, any further attempt by Mr. Gold to resolve his income tax liabilities to the United States through an Offer in Compromise pursuant to §7122 of the Code would be futile if the automatic stay is lifted through allowance of the USA Motion. Mr. Gold needs the protection of the automatic stay. He needs that protection to prevent IRS from holding his 30 day CDP Period expired notwithstanding the automatic stay of §362 and denying him the Collection Due Process rights afforded him for which he would have no judicial remedy. He also requires the automatic stay remain in effect for so long as the IRS considers his Offer in Compromise as to the TDA years and does not refuse to process the Offer because Mr. Gold has a case pending under Title 11, U.S.C., as such debtor discrimination is a matter of administrative routine to them.

Current IRS procedures as stated in the IRM would allow the IRS to refuse to process another Offer in Compromise by Mr. Gold until his bankruptcy case was no longer pending. See, IRM 5.8.10.2.1(1) and (2). Thus, from the time of the allowance of the USA Motion to the time this bankruptcy case is no longer pending, Mr. Gold would be subject to another Wage Levy for not only the 2000 year but also for the TDA years.

10

As is evident from the acts of Russo and Mavrides, the IRS has no intention of allowing Mr. Gold the rights possessed by all taxpayer's to resolve their tax liabilities through an Offer in Compromise.

There is no prohibition stated in either the Offer in Compromise section of the Code, §7122, nor Treasury Regulations promulgated under that Code section, which says the IRS cannot process an Offer in Compromise while a bankruptcy case is pending and the automatic stay is in effect. One United States District Court has held that conditions imposed by and prohibitions stated by IRS to filing an Offer in Compromise contained in the Internal Revenue Manual are not only not enforceable but are to be ignored if not stated in the statute, §7122 of the Code, and Treasury Regulations under that Code section. See, e.g., Chavez, Sr. v. U.S., 93 AFTR2d 2004-2386 (W. Dist., Tex., 2004). Since there is no statement in §7122 of the Code prohibiting Mr. Gold from seeking to resolve his tax liabilities to the United States through an Offer in Compromise, nor is there any prohibition stated in §6330 of the Code to prevent Mr. Gold from exercising his Collection Due Process rights to an Appeals Hearing where he will propose the collection alternative of an Offer in Compromise, Mr. Gold requests this Honorable Court allow him to do just that and seeks the following relief:

1. Mr. Gold requests this Court conduct an evidentiary hearing to allow him to demonstrate he meets the requirements of §362 so as to defeat the USA Motion.

2. Mr. Gold further request this Court conduct an evidentiary hearing where Mr. Gold will be able to examine Mavrides under oath to determine what exact objections he had and has to Mr. Gold filing another Offer in Compromise, and, if the Court finds Mavrides objection(s) to be not well founded, that Mavrides be prohibited from further

intervention in the processing of Mr. Gold's to be filed Offer in Compromise pursuant to §525 of Title 11 and the IRS be ordered to accept Mr. Gold's Offer for processing. There is ample precedent for the Court to order the IRS to accept an Offer in Compromise for processing.

 3. Mr. Gold further request this Court conduct an evidentiary hearing to determine if the IRS accepts another Offer in Compromise for processing and Mavrides re-issues the Wage Levy that the fact the Offer has been accepted for processing prevents the Wage Levy from being reinstated by authority of §3462(e)(2) of RRA '98, P.L. 105-206. It is the position of Mr. Gold that the Anti-Injunction Act is inapplicable to such a determination by this Court because Congress has specifically stated by that statute that enforced tax collection by IRS by way of Wage Levy is to be suspended once an Offer in Compromise has been accepted for processing. It is also the position of Mr. Gold that the Anti-Injunction Act is inapplicable to a determination by this Court that a new Wage Levy cannot be issued because Congress has specifically stated by §3462(b) of P.L. 105-206 that enforced tax collection by IRS by way of Wage Levy cannot be commenced if an Offer in Compromise is pending. Neither the Anti-Injunction Act nor the Declaratory Judgment Act bar this Court from so ordering since the Due Process Clause is implicated and there is no statutory remedy. <u>See</u>, State of South Carolina v. Regan, 465 U.S. 367 (1984). Therefore, if the Court finds grounds to order the IRS to accept Mr. Gold's Offer in Compromise for processing it has the power to enjoin the IRS from collecting the tax subject to that Offer in Compromise by way of re-issued Wage Levy or a new wage levy.

4. Mr. Gold further request this Court postpone the entry of any discharge and maintain the automatic stay until the IRS has accepted an Offer in Compromise for processing if it finds it lacks authority to grant the relief requested in ¶3.

5. Mr. Gold further requests this Court deny the USA Motion because Mr. Gold must and will move this Court for relief from the automatic stay so he may proceed to resolve his tax liabilities to the United States under the umbrella of the Collection Due Process rights afforded him by Congress and the exercise of the specific right to resolve his tax liabilities with the United States through an offer in compromise. Mr. Gold will so move before January 9, 2006. In that motion, Mr. Gold will seek an Order from this Court directing the IRS to process the same Offer in Compromise they previously accepted for processing as they would for any other taxpayer regardless of this pending proceeding; the Due Process Clause requires no less. See, Holmes v. IRS, 309 B.R. 824 (M. Dist. GA, 2004) *aff'g* In re Holmes, 298 B.R. 477 (Bankr. M. Dist., GA, 2003, Hershner, CJ).

6. Mr. Gold further request this Court deny the USA Motion.

WHEREFORE, the Debtor requests that this Court deny the relief requested in the Motion.

                      Arthur D. Gold,
                      By his Counsel,

Dated: December 1, 2005         /s/Gary W. Cruickshank, Esq.
                                      21 Custom House Street
                                      Suite 920
                                      Boston, MA 02110
                                      (617) 330-1960
                                      gwc@cruickshank-law.com
                                      (BBO107600)

                              Arthur D. Gold,
                              By his Special Tax Counsel,

Dated: December 1, 2005        /s/Peter L. Banis, Esq.
                              /s/Barry J. McGonigle, Esq.
                              21 Custom House Street
                              Suite 920
                              Boston, MA 02110
                              (617) 439-9400

## CERTIFICATE OF SERVICE

      I, Gary W. Cruickshank, hereby certify that a copy of the foregoing Response has been served electronically, upon the following parties:

| | |
|---|---|
| United States Trustee | Lynne F. Riley, Atty. |
| 1184 Thomas P. O'Neill Jr. | Riley & Esher |
|   Federal Building. | Trustee in Bankruptcy |
| 10 Causeway Street | 100 Franklin Street |
| Boston MA 02222 | Boston MA 02110 |

Nina P. Ching, Atty.
Special Assistant US Attorney
10 Causeway Street
Room 401
Boston MA 02222

Dated: December 1, 2005        /s/Gary W. Cruickshank, Esq.